LEO FOX, ESQ.
STEPHANIE PARK, ESQ.
630 THIRD AVENUE, 18TH FLOOR
NEW YORK, NEW YORK 10017
TEL: (212) 867-9595
FAX: (212) 949-1857
*Proposed Attorneys for Debtor and*
*Debtor-in-Possession*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
In re:

    The Bedford Lofts, LLC                        Chapter 11
                                                              Case No.: 12-44672 (ESS)

                                     Debtor.
-------------------------------------------------------------X

## DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION

The above-captioned Debtor and Debtor-in-Possession proposes this Plan of Reorganization pursuant to § 1121 of Title 11, Chapter 11 of the United States Code, as amended.

## ARTICLE I
## DEFINITIONS

1.1    All terms used in this Plan, unless the context otherwise requires, are as defined in Title 11 of the United States Code. The following terms have the meaning set forth in this Article I.

| | |
|---|---|
| "Administrative Claim" | Means Allowed Claims or requests for payment under § 503(b) entitled to priority under § 507(a)(2) of the Bankruptcy Code. Means administrative expenses approved by the Court pursuant to § 503(b) and United States Trustee fees under 28 U.S.C. § 1930 (United States Trustee fees are not required to have been filed as a request for payment). |
| "Allowed" | Means (a) with respect to an Administrative Claim of the kind described in §§ 503(b), (2), (3), (4) or (5) of the |

|  |  |
|---|---|
|  | Bankruptcy Code, an Administrative Claim that has been allowed, in whole or in part, by a Final Order; (b) with respect to any other Administrative Claim, including an Administrative Claim of the kind described in § 503(b), an Administrative Claim as to which no objection has been filed; (c) with respect to any Claim that is not an Administrative Claim, a Claim that is either (i) listed on the Schedules or (ii) is not a Disputed Claim or (iii) has been allowed by a Final Order; or (d) with respect to any Equity Security Interest[1], an Equity Security Interest that is not Disputed, or has been allowed in whole or in part by a Final Order. |
| "Bankruptcy Code" | Title 11 of the United States Code, sections 101, *et seq.*, or as amended thereafter, in effect as of the Petition Date. |
| "Chapter 11 Case" | Means the Chapter 11 Case No.: 12-44672 (ESS) commenced by the Debtor on the Petition Date. |
| "Claim" | Means a claim, as defined in § 101(5) of the Bankruptcy Code, against the Debtor including, without limitation, claims allowable under § 502 of the Bankruptcy Code or requests for payment of administrative expenses Allowed under § 503 of the Bankruptcy Code. |
| "Claimant" or "Creditor" | Means the holder of a Claim, including the holder of a Claim for damages resulting from the rejection of an unexpired executory contract or lease. |
| "Confirmation Date" | The date on which an Order confirming this Plan is entered by the Court, provided that such Order has not been stayed. |

---

[1] As hereafter defined.

| | |
|---|---|
| "Construction Contractor" | An entity owned by Tom Falcone. |
| "Construction Lender" | Fairmont Group. |
| "Court" | The United States Bankruptcy Court for the Eastern District of New York or such other court as may from time to time have original jurisdiction over these Chapter 11 proceedings. |
| "Debtor" | The Bedford Lofts, LLC |
| "Disallowed Claim" | Means any Claim or portion thereof that is determined in a Final Order of the Court not to be Allowed pursuant to §§ 502 or 503 of the Bankruptcy Code. |
| "Disclosure Statement" | Means any Disclosure Statement required by § 1125 of the Bankruptcy Code and approved by the Court. |
| "Disputed" | Means (a) with respect to any Claim other than an Administrative Claim, a Claim (i) that would be deemed filed pursuant to § 1111(a) of the Bankruptcy Code but as to which (A) a proof of claim has been timely filed that is inconsistent in any way with the description or treatment of such Claim in the Schedules, or (B) as to which an objection has been filed, or (ii) that would not be deemed filed pursuant to § 1111(a) of the Bankruptcy Code, whether by reason of its exclusion from the Schedules or its description therein as disputed, contingent or unliquidated, but as to which a proof of claim has been filed; or (b) with respect to an Administrative Claim, an Administrative Claim as to which an objection has been filed. |
| "Distribution" | Means a distribution of cash or cash equivalents to the holders of Allowed Claims under the Plan. |
| "Effective Date" | The date thirty days after the completion of the construction. |
| "Estate" | Means the estate created in this case pursuant to § 541 of the Bankruptcy Code. |
| "Final Order" | An order of a court from which no appeal or review can be taken, or as to which all appeals and reviews have been withdrawn or dismissed with prejudice. |

| | |
|---|---|
| "Fixed Monthly Payments" | As to MB Financial Bank N.A.'s first position priority lien, monthly payments at the rate of 3.5% *per annum* with an amortization payment based on a 30 year term, commencing upon the Effective Date and continuing for five years at which point, the principal balance of such claim shall be paid in full. As to any third position priority lien, which is held by MB Financial Bank, N.A., interest only payments for five years payable at 6% *per annum* in monthly payments commencing upon the Effective Date and continuing for five years with the balance payable in a balloon payment. As to the Construction Lender, interest-only monthly payments at 5% during the construction and 5.2% interest-only monthly payments for three years after the Effective Date and thereafter, monthly payments at 5.2% with an amortization schedule of 25 years for two years thereafter and the balance payable at the conclusion of the fifth year after the Effective Date. |
| "Maturity Date" | August of 2018 |
| "Petition Date" | Means June 26, 2012. |
| "Plan" | Debtor's Plan of Reorganization or as modified in accordance with the Bankruptcy Code. |
| "Real Property" or "Premises" | The Debtor's real estate and associated rights located at 120 South 4th Street, Brooklyn, New York, 11211 a/k/a 364/368 Bedford Avenue, Brooklyn, New York and improvements, furnishings, and fixtures located thereon. |

## ARTICLE II
## DESIGNATION OF CLAIMS AND INTERESTS

2.1   Class 1:   The first priority lien position of the Allowed Claim of M.B. Financial Bank, N.A. (the "Mortgagee") holding a mortgage (the "Mortgage") on the Premises with respect to its Claim.

2.2   Class 2:   The second priority lien position held by the Construction Lender in the amount of approximately $2,000,000 with respect to the construction loan to complete the construction of the Debtor's Premises.

2.3     Class 3:        The third priority lien position with respect to the Allowed Claim of MB Financial Bank, N.A. to the extent of the value of such lien.

2.4     Class 4:        The unsecured creditors with respect to their Allowed Claims including any deficiency claims held by MB Financial Bank, N.A.

2.5     Class 5:        The equity interests of the Debtor (the "Equity Security Interests" or "Stock Holder Interests") held by Max Stark and Israel Perlmutter (the "Principals").

> ANY HOLDER OF A CLAIM OR INTEREST IN ANY OF THE ABOVE CLASSES WHO FAILS TO OBJECT IN WRITING TO THE CLASSIFICATION PROVIDED IN THE PLAN AT LEAST FIVE (5) DAYS PRIOR TO THE HEARING ON THE DISCLOSURE STATEMENT SHALL BE DEEMED TO HAVE ACCEPTED SUCH CLASSIFICATION AND TO BE BOUND THEREBY.  ANY BALLOT WHICH IS EXECUTED BY A HOLDER OF AN ALLOWED CLAIM WHICH DOES NOT INDICATE ACCEPTANCE OR REJECTION OF THE PLAN SHALL BE DEEMED AN ACCEPTANCE OF THE PLAN. ANY CLASS THAT HAS VOTED TO ACCEPT TREATMENT UNDER THIS PLAN SHALL BE DEEMED TO ACCEPT A MORE FAVORABLE TREATMENT WITHOUT THE NEED FOR ADDITIONAL DISCLOSURE UNDER AN AMENDED PLAN FILED BY THE DEBTOR.  SUCH AMENDED PLAN MAY BE FILED AT ANY TIME PRIOR TO OR AT CONFIRMATION.

## ARTICLE III
## CLAIMS IMPAIRED UNDER THE PLAN

CLASS 1

3.1     Class 1.  The first priority lien position of the Allowed Claim of M.B. Financial Bank, N.A. holding a mortgage on the Premises with respect to its Claim.  Such Claim, in an amount to be determined by the Court, shall be paid in full over five years Fixed Monthly Payments at the rate of 3.5% *per annum* with an amortization payment based on a 30 year term, commencing upon the Effective Date and continuing for five years at which point, the principal

balance of such claim shall be paid in full. Any adequate protection payments shall be applied to the secured portion of the Class 1 Claim.

3.2     This Class is impaired and will vote on the Plan.

3.3     The Court shall determine the value of the underlying collateral as it exists at present (the "<u>Present Collateral Value</u>") and the value of such collateral at the time the construction is completed and the property is available for rental (the "<u>Completed Collateral Value</u>"). The amount of the Allowed Class 1 Claim shall be the amount of the Present Collateral Value. There shall be deducted any amounts which may arise or result from any litigation brought by the Debtor with respect to the Claims as determined by the Court.

3.4     The Debtor and this Class shall execute whatever documents are necessary. The liens as modified herein shall continue until payment hereunder.

<u>CLASS 2</u>

3.5     Class 2. The second priority lien position held by the Construction Lender in the amount of approximately $2,000,000 with respect to the construction loan to complete the construction of the Debtor's Premises. The Allowed Class 2 Claim of the Construction Lender shall be paid in full over five years with Fixed Monthly Payments at 5% during the construction and 5.2% interest-only monthly payments for three years after the Effective Date and thereafter, monthly payments at 5.2% with an amortization schedule of 25 years for two years thereafter and the balance payable at the conclusion of the fifth year after the Effective Date.

3.6     The Court shall determine the Present Collateral Value and the Completed Collateral Value. The amount of the Class 2 Claim shall equal the lesser of the actual amount of the construction costs and expenses advanced by the Construction Lender, or, the difference in amounts between the Present Collateral Value and the Completed Collateral Value.

3.7     The Debtor and this Class shall execute whatever documents are necessary.  The liens as modified herein shall continue until payment hereunder.

3.8     This Class is impaired and will vote on the Plan.

CLASS 3

3.9     Class 3.  The third priority lien position with respect to the Allowed Claim of MB Financial Bank, N.A. to the extent of the value of such lien.  The Allowed Class 3 Claim of MB Financial Bank, N.A. shall be paid in full over five years in Fixed Monthly Payments of interest only payments for five years payable at 6% *per annum* in monthly payments commencing upon the Effective Date and continuing for five years with the balance payable in a balloon payment.

3.10    This Class is impaired and will vote on the Plan.

3.11    The Court shall determine the Present Collateral Value and the Completed Collateral Value.  The amount of the Class 3 lien shall be determined after deducting from the Completed Collateral Value the amounts of the Class 1 and Class 2 Allowed Claims.  There shall be deducted any amounts which may arise or result from any litigation brought by the Debtor with respect to the Claims as determined by the Court.

3.12    The Debtor and this Class shall execute whatever documents are necessary.  The liens as modified herein shall continue until payment hereunder.

CLASS 4

3.13    Class 4.  The unsecured creditors with respect to their Allowed Claims including any deficiency claims held by MB Financial Bank, N.A.  Payment shall be made to Class 4 as follows.  The creditors shall be paid 1.5% of the principal amount of such claims on the Effective Date.

3.14    This Class is impaired and will vote on the Plan.

CLASS 5

    3.15    Class 5.  The equity interests of the Debtor held by Max Stark and Israel Perlmutter. The Equity Security Interests of the Debtor shall contribute up to the $500,000 to cover a portion of the construction estimated to aggregate approximately $2,500,000 plus $100,000 as an interest reserve for the Construction Lender plus the administrative expenses of this Chapter 11 case.

    3.16    This Class is impaired and is posting new value and will vote on the Plan.

## ARTICLE IV
## ADMINISTRATION EXPENSES AND UNCLASSIFIED CLAIMS

    4.1    Chapter 11 administration creditors, including the attorneys for the Debtor who have rendered services and who are entitled to compensation under §§ 327 and 503(b) of the Bankruptcy Code, and the fees payable to the Office of the United States Trustee under 28 U.S.C. 1930, are not classified and shall be paid in full on the Effective Date.  The reorganized Debtor will file post-confirmation, quarterly reports and pay quarterly fees, plus accrued interest until dismissal or conversion of the case or entry of a final decree.  All of the within Claims may be paid under a different agreement reached with the Debtor prior to Confirmation.

## ARTICLE V
## MEANS FOR EXECUTION OF PLAN

    5.1    The Debtor will have entered into a construction contract with the with the Construction Contractor pursuant to which the Construction Contractor shall complete the construction of the Premises, pursuant to the existing construction plans and the engineer and architect supplement describing the remaining work necessary to complete the project and obtain various government clearances necessary for certificate of occupancy.  The construction shall take place and be completed within six (6) months of commencement in order to meet the

deadline for preserving the Debtor's tax abatements under § 421-a of the New York State Real Property Tax Law by June 2013.

      5.2      The expected rental commencement date will be on or about one (1) month after the construction completion date.

      5.3      The Court shall determine the value of the collateral as it exists today and as of the collateral's completion pursuant to § 506 of the Bankruptcy Code.

      5.4      The costs of the construction of approximately $2,500,000 shall be paid through contributions by Messrs. Stark and Perlmutter in the amount of $500,000 plus $100,000 for interest reserves plus $2,000,000 in construction loan advances by the Construction Lender.

      5.5      The Debtor will arrange for the management and operation of the Premises and may retain an internal managing agent (which may be an entity owned or managed by the Debtor's Equity Holders) who may be paid the normal customary fee of 5% of receipts and customary fees for any lease renewals.

      5.6      Fee applications, if any, shall be filed on notice to Creditors.

## ARTICLE VI
## PROCEDURES FOR RESOLVING DISPUTED CLAIMS

      6.1      Time Limit for Objections to Claims.  Objections to Claims shall be filed by the Debtor with the Court and served upon each holder of each of the Claims to which objections are made not later than thirty (30) days subsequent to the Confirmation Date or within such other time period as may be fixed by the Court. Unless otherwise extended by Order of the Court, the Debtor may file an objection to the allowance of any Claim filed resulting from the rejection of an executory contract on the later of thirty (30) days following the Confirmation Date or within thirty (30) days after the filing of such Claim and service of a copy of such Claim upon the Debtor.

6.2     Resolution of Disputed Claims.  Unless otherwise ordered by the Court, the Debtor shall litigate to judgment, settle, or withdraw objections to Disputed Claims, in its sole discretion, without notice of not less than ten (10) days to any party in interest.

6.3     Payments.  Payments and Distributions to each holder of a Disputed Claim that ultimately becomes an Allowed Claim shall be made with respect to the class of Creditors to which the respective holder of an Allowed Claim belongs.  Such payments and Distributions shall be made as soon as practicable after the date that the Court enters a Final Order allowing such Claim, but not later than thirty (30) days thereafter.  Payments shall be made as and when a Disputed Claim has become, in whole or in part, an Allowed Claim or a disallowed Claim, pursuant to a Final Order or agreement between the Debtor and such Claimant or as Allowed by this Plan.

## ARTICLE VII
## THE REORGANIZED DEBTOR

7.1     The reorganized Debtor shall continue to operate and conduct its affairs with its present management, officers and directors (Messrs Stark and Permutter). The Debtor may retain an affiliate managing agent at a normal and customary managing fee of 5%.

7.2     Pursuant to § 1123(a)(6) of the Bankruptcy Code, the charter of The Bedford Lofts, LLC shall be amended to prohibit the issuance of any non-voting equity securities. Messrs. Stark and Perlmutter will continue to be members of the Debtor and shall receive no salary or compensation.

## ARTICLE VIII
## EXECUTORY CONTRACTS

8.1     The Debtor hereby rejects all contracts as of the Petition Date, except as otherwise provided herein. Persons holding Claims as a result of the rejection of an executory contract may file Claims with the Bankruptcy Court within thirty (30) days of the confirmation.

## ARTICLE IX
## MODIFICATION OF PLAN

9.1     The Debtor may amend and modify this Plan at any time prior to the Confirmation Order, without approval of the Court.  After Confirmation, the Debtor may modify this Plan before a substantial Consummation of this Plan, with the approval of this Court.

## ARTICLE X
## PROVISIONS FOR CLASSES OR HOLDERS OF CLAIMS
## WHICH ARE AFFECTED BY AND DO NOT ACCEPT THE PLAN

10.1    Any class or holders of Claims or interests which are affected by and do not vote to accept the Plan in accordance with the provisions of Bankruptcy Code § 1126 shall be treated in a fair and equitable fashion as provided by Bankruptcy Code § 1129(b).

## ARTICLE XI
## EVENT OF DEFAULT

11.1    The occurrence of any one of the following shall constitute a default by the Debtor under the Plan:

11.2    If (a) the Debtor defaults in making payments due under the Plan (and the grace period provided for herein shall have passed), unless such default (hereinafter referred to as an "Event of Default") has been waived in accordance with the terms herein; (b) the Debtor breaches any of the covenants contained herein prior to payment of payments due under the Plan; (c) the Debtor seeks relief under any federal or state statute (other than the Debtor's present Chapter 11 Case); (d) or a receiver, liquidator, custodian, or trustee is appointed for substantially all of the property of the Debtor prior to completion of the payment of payments due. Upon the occurrence of an Event of Default, any Creditor shall notify the Debtor therefor, and with the exception of any monetary default on account of payment, the Debtor shall have ten (10) business days from the date of the sending of such notice to cure such breach.  With respect to a breach for non-payment, the Debtor shall have a cure period of five (5) business days.  In the event the Debtor fails to cure such breach within the prescribed periods, the Debtor shall be deemed to have defaulted on the terms of the Plan and the Creditors shall have all rights available to them under state law or the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure, or under this Plan, including conversion to a Chapter 7 case.

## ARTICLE XII
## EFFECT OF COURT'S CONFIRMATION

12.1    Pursuant to § 1141(d) of the Bankruptcy Code, the Confirmation Order shall discharge Claims against the Debtor.   Except as expressly provided herein, the rights afforded in

the Plan and the treatment of all Creditors and holders of Stock Interest provided herein shall be in exchange for and in complete satisfaction, discharge and release of all Claims existing as of the Confirmation Date, of any nature whatsoever, whether known or unknown, contingent or liquidated, including any interest accrued or expenses incurred thereon from and after the Debtor's Petition Date, against the Debtor and the Debtor-in-Possession (or any of its properties or interest in properties) and the professionals representing the Debtor (arising out of services in connection with this Chapter 11 Case) in this Chapter 11 Case (excluding negligent acts of willful misconduct, *ultra vires* acts, and breaches of fiduciary duty). Except as otherwise provided herein, upon the Confirmation Date, all Claims against the Debtor and the above-mentioned professionals will be satisfied, discharged and released (except for those obligations identified in the Plan) in full exchange for the consideration provided for hereunder. All persons and entities shall be precluded from asserting against the Debtor, its successors, its respective assets or properties, and the above referenced-persons and professionals, any of the above Claims and any other claims based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Confirmation Date. Nothing herein shall discharge any claim for fraud, gross negligence or willful misconduct, *ultra vires* acts or breaches of fiduciary duty against any profession.

   12.2 The effects of confirmation of the Plan are set forth in the Bankruptcy Code. The following is a brief summary of the effect of confirmation upon the Debtor, its Creditors and

other interested parties. Upon Confirmation, the provisions of the Plan will bind the Debtor, its equity holders and Creditors, whether or not they have accepted the Plan. All liens and Claims are canceled and extinguished unless dealt with differently in the Plan.  Satisfaction of the Debtor's pre-Chapter 11 debts and those incurred subsequently to the commencement of this case all are governed by the Plan.

## ARTICLE XIII
## INJUNCTION AND EXONERATION

13.1    Except as otherwise provided in the Plan or Confirmation Order on and after the Confirmation Date, all entities which have held, currently hold or may hold a debt, Claim, other liability or interest against the Debtor that would be discharged upon confirmation of the Plan pursuant to the provisions of § 1141(d) of the Bankruptcy Code and this section are permanently enjoined from taking any of the following actions on account of such debt, Claim, liability, interest or right: (a) commencing or continuing in any manner any action or other proceeding on account of such Claim against property which is to be distributed under this Plan, other than to enforce any right to Distribution with respect to such property under the Plan; (b) enforcing, attaching collecting or recovering in any manner or judgment, award, decree, order other than as permitted under sub-paragraph (a) above; and (c) collection efforts against creating, perfecting or enforcing any lien or encumbrance against any property to be distributed under this Plan.

## ARTICLE XIV
## RETENTION OF JURISDICTION AND DISCHARGE

14.1    Notwithstanding confirmation, the Bankruptcy Court shall retain jurisdiction for the following purposes:

- (a) Determination of the allowance of Claims upon objections filed to such Claims;
- (b) Determination of requests for payment of Claims and fees entitled to priority under § 507 of the Bankruptcy Code;
- (c) Resolution of any disputes concerning the interpretation of the Plan;
- (d) Implementation of the provisions of the Plan;
- (e) Entry of Orders in aid of consummation of the Plan;
- (f) Modification of the Plan pursuant to § 1127 of the Bankruptcy Code;
- (g) Adjudication of any causes of action including avoidance actions commenced by the Debtor-in-Possession; and
- (h) Entry of a Final Order of consummation and closing the case.

Dated:  New York, New York
        September 24, 2012

The Bedford Lofts, LLC

By:  _s/ Max Stark_
     MAX STARK

Leo Fox, Esq.
Stephanie Park, Esq.
*Proposed Attorneys for Debtor
and Debtor-in-Possession*

630 Third Avenue
New York, New York  10017
(212) 867-9595

H:\@Clients\Bedford Lofts\Plan 9-20-12.doc