LEO FOX, ESQ.
STEPHANIE PARK, ESQ.
630 THIRD AVENUE, 18TH FLOOR
NEW YORK, NEW YORK 10017
TEL: (212) 867-9595
FAX: (212) 949-1857
*Attorneys for Debtor and*
*Debtor-in-Possession*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
In re:

    The Bedford Lofts, LLC                        Chapter 11
                                                              Case No.: 12-44672 (ESS)

                                    Debtor.
-------------------------------------------------------------X

## **DEBTOR'S SECOND AMENDED CHAPTER 11 PLAN OF LIQUIDATION**

The above-captioned Debtor and Debtor-in-Possession proposes this Second Amended Plan of Liquidation pursuant to § 1121 of Title 11, Chapter 11 of the United States Code, as amended.

## ARTICLE I
### DEFINITIONS

1.1    All terms used in this Plan, unless the context otherwise requires, are as defined in Title 11 of the United States Code. The following terms have the meaning set forth in this Article I.

| | |
|---|---|
| "Administrative Claim" | Means claims or requests for payment under § 503(b) entitled to priority under § 507(a)(2) of the Bankruptcy Code. Means Administrative Expenses, Closing Expenses, and United States Trustee fees under 28 U.S.C. § 1930 (United States Trustee fees are not required to have been filed as a request for payment). |
| "Administrative Expenses" | Means such fees and expenses accrued since the Petition Date by the Estate and as may be required to close the Chapter 11 Case under applicable law, |

| | |
|---|---|
| | including, but not limited to United States Trustee quarterly fees, post-petition taxes, and reasonable fees of Estate professionals and Closing Expenses. |
| "Allowed" | Means: (a) with respect to an Administrative Claim of the kind described in §§ 503(b)(2), (3), (4) or (5) of the Bankruptcy Code, an Administrative Claim that has been Allowed, in whole or in part, by a Final Order; (b) with respect to any other Administrative Claim, including an Administrative Claim of the kind described in § 503(b), an Administrative Claim as to which no objection has been filed; (c) with respect to any Claim that is not an Administrative Claim, a Claim that is either (i) listed on the Schedules or (ii) is not a Disputed Claim or (iii) has been allowed by a Final Order; or (d) with respect to any equity interest, an equity interest that is not Disputed, or has been allowed in whole or in part by a Final Order. |
| "Bankruptcy Code" | Title 11 of the United States Code, Sections 101, *et seq.* or as amended thereafter in effect as of the Petition Date. |
| "Chapter 11 Case" | Means the Chapter 11 Case No. 12-44672 (ESS) commenced by voluntary petition by the Debtor on the Petition Date. |
| "Claim" | Means a claim, as defined in § 101(5) of the Bankruptcy Code, against the Debtor including, without limitation, claims allowable under § 502 of the Bankruptcy Code or requests for payment of administrative expenses Allowed under § 503 of the Bankruptcy Code. |
| "Claimant" or "Creditor" | Means the holder of a Claim, including the holder of a claim for damages resulting from the rejection of an unexpired executory contract or lease. |
| "Closing" | Means the closing of a sale of the Real Property at which time the deed will be delivered to a purchaser and the purchase price shall be delivered to the escrow account of the attorneys for the Debtor to be held and/or distributed to the holders of Allowed Claims pursuant to the provisions of the Plan. |

| | |
|---|---|
| "Closing Expenses" | Means fees and expenses required to close the sale of the Debtor's Real Property, including reasonable attorneys' fees, title costs, transfer taxes, if any, adjustments and brokers compensation, if any, associated with the sale. |
| "Confirmation Date" | The date on which an Order confirming this Plan is entered by the Court, provided that such Order has not been stayed. |
| "Court" | The United States Bankruptcy Court for the Eastern District of New York or such other court as may from time to time have original jurisdiction over these Chapter 11 proceedings. |
| "Debtor" | The Bedford Lofts, LLC. |
| "Disallowed Claim" | Means any Claim or portion thereof that is determined in a Final Order of the Court not to be Allowed pursuant to §§ 502 and 503 of the Bankruptcy Code. |
| "Disclosure Statement" | Means any disclosure statement required by § 1125 of the Bankruptcy Code and approved by the Court. |
| "Disputed" | Means (a) with respect to any Claim other than an Administrative Claim, a Claim (i) that would be deemed filed pursuant to § 1111(a) of the Bankruptcy Code but as to which (A) a proof of claim has been timely filed that is inconsistent in any way with the description or treatment of such Claim in the Schedules, or (B) as to which an objection has been filed, or (ii) that would not be deemed filed pursuant to § 1111(a) of the Bankruptcy Code, whether by reason of its exclusion from the Schedules or its description therein as disputed, contingent or unliquidated, but as to which a proof of claim has been filed; or (b) with respect to an Administrative Claim, an Administrative Claim as to which an objection has been filed. |
| "Distribution" | Means a distribution of cash or cash equivalents to the holders of Allowed Claims under the Plan. |
| "Effective Date" | The date ten (10) days after Closing. |

| | |
|---|---|
| "Estate" | Means the bankruptcy estate created in this case pursuant to § 541 of the Bankruptcy Code. |
| "Filing Date" | Means June 26, 2012, the date upon which a voluntary petition for Chapter 11 relief was commenced by the Debtor. |
| "Final Distribution" | Means the date on which all Distributions provided for under this Plan have been mailed or otherwise issued to holders of all Allowed Claims. |
| "Final Order" | An order of a court from which no appeal or review can be taken, or as to which all appeals and reviews have been withdrawn or dismissed with prejudice. |
| "Plan" | Means this Plan of Liquidation, as the same may be modified in accordance with the Bankruptcy Code. |
| "Real Property" | The real estate and associated rights owned by the Debtor and located at 120 South 4th Street, Brooklyn, New York, 11211 a/k/a 364/368 Bedford Avenue, Brooklyn, New York, and improvements, furnishings, and fixtures located thereon. |

## ARTICLE II
### DESIGNATION OF CLASSES OF CLAIMS AND INTEREST

2.1     **Class 1**: Class 1 consists of the first priority lien position of the Allowed Claim of Tant LLC (the "Mortgagee") holding a mortgage (the "Mortgage") on the Real Property with respect to its Claim, alleged to have a balance of at least $10,566,707.24 as of September 24, 2012, plus interest and other charges due under the Mortgage loan documents. Any adjustments in the calculation of the Mortgagee's claim shall be provided prior to Confirmation.

2.2     **Class 2**[1]**:** Class 2 consists of the Allowed Secured Claim of the New York City Environmental Control Board to the extent that the sales price of the Real Property results in Class 2 holding a secured Claim, otherwise, this class is a Class 4 unsecured Claim.

---

[1] To the extent it is found that the Claim of the New York City Environmental Control Board is of lesser priority to the Claim of the City of New York Housing Preservation and Development, the Claim of New York City

2.3    **Class 3**: Class 3 consists of the Allowed Secured Claim of the City of New York Housing Preservation and Development to the extent that the sales price of the Real Property results in Class 3 holding a secured Claim, otherwise, this class is a Class 4 unsecured Claim.

2.4    **Class 4**: Class 4 consists of the Debtor's Allowed unsecured Claims.

2.5    **Class 5**: Class 5 consists of the equity holder interests of Max Stark and Israel Perlmutter. Max Stark holds 50% equity interest of the Debtor and Israel Perlmutter holds 50% equity interest of the Debtor (the "Equity Interest").

2.6    **Impaired Classes**: Classes 1, 2, 3, 4, and 5 are impaired under the Plan.

2.7    **Objections**. In the event of a controversy as to whether any Class is impaired, the Court shall, after notice and a hearing, adjudicate such controversy.

> ANY HOLDER OF A CLAIM OR INTEREST IN ANY OF THE ABOVE CLASSES WHO FAILS TO OBJECT IN WRITING TO THE CLASSIFICATION PROVIDED IN THE PLAN AT LEAST FIVE (5) DAYS PRIOR TO THE HEARING ON CONFIRMATION OF THIS PLAN SHALL BE DEEMED TO HAVE ACCEPTED SUCH CLASSIFICATION AND TO BE BOUND THEREBY. ANY BALLOT WHICH IS EXECUTED BY A HOLDER OF AN ALLOWED CLAIM WHICH DOES NOT INDICATE ACCEPTANCE OR REJECTION OF THE PLAN SHALL BE DEEMED AN ACCEPTANCE OF THE PLAN. ANY CLASS THAT HAS VOTED TO ACCEPT TREATMENT UNDER THIS PLAN SHALL BE DEEMED TO ACCEPT A MORE FAVORABLE TREATMENT, WITHOUT THE NEED FOR ADDITIONAL DISCLOSURE, UNDER ANY AMENDED PLAN FILED IN THIS CASE. SUCH AMENDED PLAN MAY BE FILED AT ANY TIME PRIOR TO OR AT CONFIRMATION.

### ARTICLE III
### TREATMENT OF CLASSIFIED CLAIMS UNDER THE PLAN

3.1    **Class 1**:    The Debtor has entered into a written agreement subject to Court approval for the Debtor to sell the Real Property to Bedford Residence LLC (the "Buyer"),

---

Environmental Control Board shall be a Class 3 Claim and the Claim of the City of New York Housing Preservation and Development shall be a Class 2 Claim.

subject to higher and better offers at a public sale. The Buyer and Mortgagee agree that the Buyer will assume the first position Mortgage and that the purchase offer by the Buyer shall be made "subject to" the Mortgage as adjusted and described. Furthermore, the Buyer has agreed to provide the Mortgagee with a personal guaranty of the indebtedness evidenced by the Mortgage and previously extended by the Debtor's principals and/or equity holders. The sale is subject to higher and better offers (the "<u>Sale</u>") at a hearing on the motion for approval to sell (the "<u>Sale Hearing</u>").

      3.2     The purchase offer by the Buyer shall include a complete mortgage assumption component, an express guaranty, and proof of title insurance and must include a cash component in an amount equal to the unpaid administrative expenses of the Debtor's Chapter 11 case (unless deferred or waived pursuant to written agreement by such Administrative Creditor), any title insurance necessary to insure the Mortgage position, a 2% distribution to the general unsecured creditors, and closing expenses of the Sale and case. The cash component of the bid shall constitute a credit to and shall reduce the first mortgage balance. The amount of the cash component of the bid shall be provided by the Debtor to the Buyer at least 10 days prior to Confirmation. The Mortgagee has agreed that the cash component of the purchase offer by the Buyer, or if another entity is the successful purchaser, the cash proceeds equal to the cash component, shall be a credit to the first Mortgage balance. The purchase offer by the Buyer shall be accompanied by the cash component to be delivered in escrow to Debtor's insolvency attorney prior to Confirmation, and returned if the Buyer is not the successful bidder through no fault of the Buyer.

      3.3     The Debtor and Mortgagee may, at each such entity's sole discretion, enter into an agreement providing for the continuation of the construction of the Real Property and the

advancing of funds to enable such construction to proceed on a secured basis ("Additional Mortgage Financing"), either prior to Confirmation, or post-confirmation.  In such case, the Buyer and Mortgagee may enter into an assumption agreement with respect to the Additional Mortgage Financing and to "bid" such Additional Mortgage Financing in the priority allocated such financing.

       3.4     Any bidder (other than the Buyer or other bidder who has entered into an agreement with the Mortgagee to purchase "subject to" the Mortgage) at the Sale Hearing must post a 10% cash down payment with Debtor's counsel (returnable if the Debtor sells the Real Property to another entity).  The bid must be at least $50,000 higher than the Buyer's bid. If the purchaser of the Real Property is an entity other than the Buyer, and such purchaser has not entered into an agreement with the Mortgagee to purchase "subject to" the Mortgage, the sales price to be paid must be paid by the successful purchaser in an all cash transaction.

       3.5     No broker's fee will be paid under this transaction.  The Closing shall take place within 30 days after entry of an Order approving the Sale.

       3.6     If the sales price exceeds the first mortgage amount, any excess proceeds will be distributed to the secured claims identified herein in the order of priority provided under the law, then to unsecured creditors on a *pro rata* basis.

       3.7     Class 1 is impaired and may vote on the Plan.

       3.8     **Class 2**:     Payment shall be made to the Allowed Secured Claim of the New York City Environmental Control Board up to the amount of $170,915.67 if the sales price of the Real Property exceeds the amount needed to pay the first mortgage, and in the order of priority provided under the law, in full satisfaction and settlement of the claims of Class 2.  All of such

Claim or any balance shall be a Class 4 unsecured Claim if there are no or insufficient proceeds to pay the Claim. Class 2 is impaired and may vote on the Plan.

3.9   **Class 3:**   Payment shall be made to the Allowed Secured Claim of the City of New York Housing Preservation and Development in the amount of $53,485.21 if the sales price of the Real Property exceeds the amounts needed to pay the first mortgage and the New York City Environmental Control Board, and in the order of priority provided under the law, in full satisfaction and settlement of the claims of Class 3. All of such Claim or any balance shall be a Class 4 unsecured Claim if there are no or insufficient proceeds to pay the Claim. Class 3 is impaired and may vote on the Plan.

3.10   **Class 4:**   Payment shall be made on account of the Allowed Unsecured Claims of the Debtor in the approximate amount of $6,985,789.60 (plus any deficiencies above), including the claim of the Internal Revenue Service for $13,569.36 (proof of claim number 1), on a *pro rata* basis from excess of the sales price of the Real Property over the amounts needed to pay Classes 1, 2, and 3. This class shall receive a minimum 2% distribution on the principal amount of such claims held by Class 4 creditors, payable on the Effective Date if such Class does not receive at least 2% from the proceeds of the sale. Class 4 is impaired and may vote on the Plan.

3.11   Any liens given on account of the Additional Mortgage Financing relating to the continuation of the construction of the Real Property shall be paid from the proceeds of sale in the priority determined at the time of the commencement of the Additional Mortgage Financing, or alternatively after all liens and prior to the general unsecured creditors.

3.12   **Class 5:**   Holders of allowed Class 5 Equity Interests shall receive any balance of the proceeds of the Real Property after payment of the Administrative and Closing

Expenses and the payment to Classes 1, 2, 3, and 4 as reflected above. The Equity Interests will be cancelled once the Real Property (the Debtor's sole asset) is sold, except that any personal liability on the part of any guarantor of the Mortgage, including any liability of the Equity Interests, shall remain enforceable by the Mortgagee and surviving Confirmation. Class 5 may not vote on the Plan pursuant to § 1126(g) of the Bankruptcy Code.

ARTICLE IV
SALE OF REAL PROPERTY

4.1    **Sale of Real Property**. This Plan contemplates the sale of the Real Property to the Buyer, subject to Court approval, and subject to higher and better offers at a public sale.

4.2    **Offers and Contract of Sale**. The Estate shall be permitted to enter into a contract for the sale of the Real Property in a form reasonably acceptable to the Debtor (the "Contract of Sale"). The sale will be of the Real Property "as is" and pursuant to the sale terms and conditions approved by the Court prior to such sale.

4.3    **Sale Hearing**. The Debtor shall provide notice of the Sale Hearing, including the general terms and conditions of any Contract of Sale, to the creditors of the Estate and all parties in interest. Any Contract of Sale may be subject to higher and better offers in accordance with certain bidding procedures and/or auction process as the Bankruptcy Court may order. The Sale Hearing will take place in the Courtroom of the Honorable Elizabeth S. Stong, United States Bankruptcy Judge at the United States Bankruptcy Court for the Eastern District of New York, Conrad B. Duberstein Courthouse, 271 Cadman Plaza East, Brooklyn, New York 11201. On that day, the Court will review the sale terms, rule on any objections to the proposed sale, rule on which offer is higher or better, if necessary, and rule on any other matters pertaining to the sale which may arise.

4.4     **Sale Order**. At the conclusion of the Sale Hearing, if the Court approves the proposed sale and overrules any pending objections, the Debtor shall obtain a Court Order (the "<u>Sale Order</u>") providing, *inter alia*, that: (a) the Sale is approved, (b) the Real Property constitutes property of the Estate and the transfer of the Real Property from the Estate to the Buyer is authorized, (c) the transfer of the Real Property is free and clear of any and all rights, liens, claims or encumbrances of all persons including, but not limited to, equity ownership claims, except to the extent of an assumption of the Mortgage debt (d) the Buyer or other purchaser shall have no liability whatsoever for any claims against the Debtor or the Estate or any liabilities or obligations of the Debtor or its Estate including, without limitation, any taxes arising under or out of, in connection with, or in any way relating to the Real Property prior to the date of the closing, and (e) any other provisions which may be necessary or desirable in order to effectuate the Sale.

4.5     **Closing of Sale**. The Estate and the Buyer or other purchaser shall proceed to Closing within 30 days after the entry of an Order approving the sale.

4.6     **Sale Proceeds**. All proceeds from the sale shall be delivered to and deposited with the Debtor's attorney (as Authorized Agent) in an interest-bearing escrow account, and shall be paid out solely as permitted by this Plan or by Court Order. The Authorized Agent shall provide information including balances with respect to such escrowed funds to any of the parties in interest requesting such information.

**ARTICLE V**
<u>ADMINISTRATION EXPENSES AND UNCLASSIFIED CLAIMS</u>

5.1     **Administrative Claims**. No classes are designated for Administrative Claims or United States Trustee Fees under 28 U.S.C. § 1930.  As soon as practicable following the Effective Date, the Authorized Agent shall pay Allowed Administrative Claims including

attorneys' fees, administrative costs, and closing fees as of the Effective Date and the United States Trustee Fees in cash including fees based on distributions under the Plan, from the funds described in Article III. With respect to Administrative Claims that are not Allowed Claims as of the Effective Date but that become Allowed after the Effective Date, the Authorized Agent shall reserve and pay such Administrative Claims as soon as practicable after they become Allowed Claims, in cash in the amount Allowed. Nothing herein shall preclude any person from filing an application under § 506(c) of the Bankruptcy Code on behalf of any professional or holder of a claim for an administrative expense or any objection to such application.

    5.2    **United States Trustee Fees.**  The Authorized Agent shall pay all statutory and/or quarterly fees due and payable, under 28 U.S.C. § 1930, plus accrued interest under 31 U.S.C. § 3717, on all disbursements, including plan payments and disbursements inside and outside the ordinary course of business, until the entry of a final decree, dismissal or conversion of the case to Chapter 7.

    5.3    **Post-Confirmation Reports.**  Following Confirmation, the Debtor shall file quarterly post-confirmation reports in accordance with U.S. Trustee Guidelines.

**ARTICLE VI**
<u>MEANS FOR EXECUTION OF PLAN</u>

    6.1    **Closing of Sale**.  The Estate shall proceed toward a Closing of a sale of the Real Property in accordance with the terms of Article IV of this Plan. Following the Closing, all sales proceeds shall be deposited with the Authorized Agent and Distributions shall be made in accordance with the provisions of this Plan.

    6.2    **Distributions and Reserves in General**.  As soon as possible following the Closing and on or about the Effective Date, the Authorized Agent shall disburse funds to and/or reserve for the holders of Allowed Claims in Classes 1, 2, 3, 4, and 5 and any Allowed

Administrative Claims and any United States Trustee Fees pursuant to 28 U.S.C. § 1930. Thereafter in accordance with the Orders of this Court adjudicating the rights and priorities of any Disputed Claims, the Authorized Agent shall estimate and reserve sufficient funds to pay any Administrative Expenses, unclassified claims, Closing Expenses, or other Disputed Claims which are not resolved by the Effective Date.

6.3     **Fee Applications**. Debtor's attorneys may file a fee application seeking an award of the Court for fees based on hourly rates for the services rendered and disbursements incurred in connection with this case, which shall be deemed an "Administrative Claim."

6.4     **Exemption From Taxes**. The transfer of the Real Property to the Buyer contemplated by this Plan constitutes a transfer exempt from any transfer tax pursuant to § 1146 of the Bankruptcy Code and, accordingly, shall not be taxed and/or shall not be subject to any tax under any federal, state, local, municipal or other law imposing or claiming to impose a stamp tax or a sale, use, transfer, or any other similar tax on any of the transfers or sales of real estate, personal property, or other assets owned by the Debtor or its Estate.

6.5     **Liquidation of Debtor**. Following the Effective Date, the Debtor shall be deemed dissolved and shall no longer operate.

## ARTICLE VII
PROCEDURES FOR RESOLVING DISPUTED CLAIMS

7.1     **Objections to Claims**. Objections to Claims (other than Claims Allowed under the provisions of this Plan), including an effort to subordinate any Claim, or to treat a Class separately, shall be filed by the Debtor with the Court and served upon the holder such Disputed Claim not later than thirty (30) days subsequent to the Confirmation Date or within such other time period as may be fixed by the Court. Unless otherwise extended by Order of the Court, the Debtor may file an objection to the allowance of any Claim filed resulting from the rejection of

an executory contract on or unexpired lease the later of thirty (30) days following the Confirmation Date or within thirty (30) days after the filing of such Claim. The Debtor is not aware at this time of any executory contracts. At this time, the Debtor will not assert avoidance rights on behalf of the Estate as granted to a trustee under Chapter 5 of the Bankruptcy Code in support of its objections.

7.2    **Resolution of Disputed Claims**. Unless otherwise ordered by the Court, the proponent of any objection to Claim shall litigate to judgment, settle, or withdraw any and all objections, upon notice to the holder of the subject Disputed Claim.

7.3    **Payments on Allowed Claims**. Payments and distributions to each holder of a Disputed Claim that ultimately becomes an Allowed Claim shall be made in accordance with the provisions of the Plan. To the extent that any Claim is later Allowed, payments and distributions shall be made as soon as practicable after the later of: (a) the date that the Court enters a Final Order allowing such Claim, but not later than thirty (30) days thereafter, or (b) the Effective Date of this Plan.

## ARTICLE VIII
### FULL AND FINAL SATISFACTION OF CLAIMS

8.1    **All Distributions in Full and Final Satisfaction.** All payments and all Distributions to be made hereunder on account of Claims (including Administrative Claims) shall be in full and final satisfaction, settlement, release and discharge of such Claims as against the Debtor, its property, and the Estate. On and after the Effective Date, the Debtor is released from all Claims and other liabilities in existence one day prior to the Effective Date, subject to the continuing obligations of the Authorized Agent under the Plan.

8.2    **Exculpation and Limited Releases for Interested Parties**. Subject to the above, the Debtor and its agents and attorneys shall not have or incur any liability to any person or

entity for any post-petition act or omission with respect to (a) in connection with the administration of the Debtor's bankruptcy case, and/or (b) the ratification and filing of this Plan, the negotiations of the terms of this Plan and the attendant Disclosure Statement and all of the settlements contained in the Plan; provided, however, that the foregoing exculpation shall not apply to acts or omissions in bad faith or as a result of recklessness, willful misconduct or gross negligence.

## ARTICLE IX
## CONTRACTS AND LEASES

9.1 **Rejection of Contracts and Leases**. The Debtor does not believe that the Debtor is party to any executory contracts or unexpired leases. To the extent any contracts or leases are determined to be validly existing, the Debtor hereby rejects those contracts and leases as of the Effective Date, except as otherwise provided herein. Persons holding claims as a result of the rejection of an executory contract or unexpired lease may file claims with the Court within thirty (30) days of the Confirmation.

## ARTICLE X
## MODIFICATION OF PLAN

10.1 **Modification of Plan.** This Plan may be modified by the Debtor at any time prior to the Confirmation Date. The Debtor may modify the Plan in any manner consistent with § 1127 of the Bankruptcy Code prior to substantial consummation thereof. This Plan may be modified after substantial consummation with the approval of the Court, provided that such modification does not affect the essential economic treatment of any entity that objects in writing to such modification.

## ARTICLE XI
## RETENTION OF JURISDICTION

11.1  **Retention of Jurisdiction.** From the Confirmation Date until entry of a final decree closing the Debtor's bankruptcy case (pursuant to 11 U.S.C. § 350 and Rule 3022 of the Federal Rules of Bankruptcy Procedure), the Court shall retain such jurisdiction as is legally permissible over the Bankruptcy case(s) for the following purposes:

(a) Determination of the allowability of Claims upon objections or adversary proceedings filed with respect to such Claims;

(b) Determination of requests for payment of Claims and fees entitled to priority under § 507;

(c) Resolution of any disputes concerning the interpretation of the Plan;

(d) Implementation of the provisions of the Plan;

(e) Entry of Orders in aid of consummation of the Plan;

(f) Modification of the Plan pursuant to § 1127 of the Bankruptcy Code; and

(g) Entry of a Final Order of consummation and closing the bankruptcy case.

Dated: New York, New York
      March 15, 2013

Respectfully Submitted,

*s/ Leo Fox*
Leo Fox, Esq.
Stephanie Park, Esq.
Attorneys for the Debtor
630 Third Avenue
New York, New York 10017
(212) 867-9595